**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SOCIAL RANGER, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 14-1525-LPS |
| FACEBOOK, INC., | ) | **REDACTED PUBLIC VERSION** |
| Defendant. | ) | |

# FACEBOOK'S BRIEF IN OPPOSITION TO SOCIAL RANGER'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. MARK ISRAEL


*Of Counsel*:

Thomas O. Barnett
Jonathan Gimblett
Anne Y. Lee
Katharine Mitchell-Tombras
Lauren S. Willard
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001

Kathryn E. Cahoy
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065

Mark C. Hansen
Kevin B Huff
KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

ROSS ARONSTAM & MORITZ LLP
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
Anne M. Steadman (#6221)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
dross@ramllp.com
bschladweiler@ramllp.com
asteadman@ramllp.com

*Counsel for Defendant Facebook, Inc.*


Dated: April 7, 2017

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 1

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 3

A. Plaintiff's Disagreement with Dr. Israel's Conclusion that Super Rewards Operated in a Competitive Industry with Low Barriers to Entry Is Not a Valid Ground for Exclusion. .......... 3

B. Plaintiff's Disagreement with Dr. Israel's Estimates of Super Rewards' But-For Margin and Share Is Not A Basis for Excluding His Testimony. .......... 6

C. Dr. Israel's Opinion Regarding the Impact of Super Rewards Poor Business Decisions Is Relevant to Damages. .......... 9

V. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Breidor v. Sears, Roebuck and Co.*,
722 F.2d 1134 (3d Cir. 1983)....................3

*Coleman Motor Co. v. Chrysler Corp.*,
525 F.2d 1338 (3d Cir. 1975)....................10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................3, 5

*Exelis Inc. v. Cellco P'ship*,
2012 WL 6043494 (D. Del. Nov. 6, 2012)....................3, 9

*R. S. E., Inc. v. Pennsy Supply, Inc.*,
523 F. Supp. 954 (M.D. Pa. 1981)....................9, 10

*Stecyk v. Bell Helicopter Textron, Inc.*,
295 F.3d 408 (3d Cir. 2002)....................6

*Walker v. Gordon*,
46 F. App'x 691 (3d Cir. 2002)....................6

## Other Authorities

Federal Rule of Evidence 702....................1, 3

## I. INTRODUCTION

Plaintiff's motion to exclude the testimony of Facebook's damages expert, Dr. Mark Israel, should be denied. Dr. Israel uses a reasonable methodology to estimate Super Rewards' damages in a but-for world where it earned a competitive rate of return. His report also demonstrates the grossly distorting impact of the unsupported assumptions that underlie the damages model put forward by Plaintiff's expert. Plaintiff seeks to exclude Dr. Israel's opinions based on its disagreement with facts upon which Dr. Israel relies, and the conclusions he draws. Neither argument provides a sound basis for excluding expert testimony under Rule 702.

## II. STATEMENT OF FACTS

Plaintiff's damages expert, Dr. Jeffrey Leitzinger, opines that Social Ranger—a company that operated in a highly competitive environment with no significant barriers to entry and that lost money in all but one year (*see* Ex. 13[1])—would have earned [redacted] in profits absent Facebook's challenged payments policy. Ex. 1 at Ex. 15. Dr. Leitzinger calculated Super Rewards' lost profits using a model that relies on assumptions about Super Rewards' share of virtual currency services ("VCS") on Facebook's Platform and the profit margin that Super Rewards would have obtained in the but-for world. *Id.* ¶¶ 62-69, Exs. 10, 15.

In response, Facebook submitted an expert opinion by Dr. Israel, who offers: (1) an alternative damages estimate relying on basic economic principles, undisputed facts in the record, and a model that fits the competitive VCS industry and (2) a critique illustrating the unreliability of Dr. Leitzinger's assumptions and resulting lost profits estimate[2] (Ex. 2 ¶ 11):

---

[1] "Ex." refers to exhibits to the April 7, 2017 Declaration of Anne Y. Lee.

[2] Plaintiff mischaracterizes Dr. Israel's testimony to suggest that he does not "dispute" Dr. Leitzinger's methodology and assumptions. D.I. 316 at 2-3. Dr. Israel actually testified that he did not dispute Dr. Leitzinger's *math*. *See, e.g.*, Ex. 3 at 376:16-378:18 ("[A]gain, I don't dispute the math of his calculation. I dispute the meaning of it and the inferences, but I don't (continued…)

(1) Alternative Damages Estimate: Competitive Rate of Return Calculation

Dr. Israel first calculates the rate of return implied by Dr. Leitzinger's estimate and finds that Dr. Leitzinger's [redacted] damages figure assumes, without explanation or justification, a supra-competitive rate of return—64%—which far exceeds the competitive rate. Given the lack of any basis for a sustainable competitive advantage, Dr. Israel finds this supra-competitive rate of return unjustified. Dr. Israel applies an alternative model that assumes Super Rewards would have earned, at most, a competitive (rather than supra-competitive) rate of return, which yields an upper bound of [redacted] for Plaintiff's purported damages. *See* Ex. 2 ¶¶ 39-50.

(2) Critique of Dr. Leitzinger's Damages Estimate: Unreliability of Share and Margin Values

To demonstrate the unreliability of Dr. Leitzinger's lost profits calculation, Dr. Israel adjusts two of the most implausible assumptions in Dr. Leitzinger's model— margin and share— to reflect reality and re-calculates Plaintiff's estimated damages. *See, e.g.* Ex. 2 at Ex. 4; Ex. 3 at 24:21-25:6 ("Effectively, I would describe this as adapting Dr. Leitzinger's approach using share and margins that I consider to be more appropriate."). For example, whereas Dr. Leitzinger assumes a margin of almost 10%, Dr. Israel uses a margin of about 4%, which reflects the commoditized nature of payment-related businesses (*e.g.*, PayPal operates with a 3.73% margin). As the CEO of Plaintiff's parent company recognized in 2010, the company "should expect no more than 5% margins on" the vast majority of Super Rewards' business. Ex. 6.

Dr. Israel does not endorse Dr. Leitzinger's model, but illustrates that using realistic values for these two variables reduces estimated damages in his model to a range of [redacted] to [redacted], depending on the estimates used. *See* Ex. 2 ¶¶ 82-83. This result is consistent with Super Rewards earning up to a competitive rate of return and thus corroborates an upper

---

dispute the math of the calculation.").

bound for Plaintiff's damages of [redacted]. *See id.* ¶ 76.

Finally, Dr. Israel analyzes factors independent of the challenged Facebook conduct that would have affected Super Rewards' but-for performance, which Dr. Leitzinger fails to take into account in his analysis. *Id.* ¶¶ 11, 84-93.

## III. LEGAL STANDARD

Rule 702 "requires that expert testimony be: (1) based upon sufficient facts or data; (2) the product of reliable principles and methods; and (3) the reliable application of those principles and methods to the facts of the case." *Exelis Inc. v. Cellco P'ship*, 2012 WL 6043494, at *13 (D. Del. Nov. 6, 2012). The focus of the court's inquiry "must be solely on [the expert's] principles and methodology, not on the conclusions that they generate." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). "Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge." *Breidor v. Sears, Roebuck and Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983).

## IV. ARGUMENT

Plaintiff does not challenge Dr. Israel's qualifications or his methodology.[3] Rather, Plaintiff makes three arguments that amount to nothing more than a dispute with Dr. Israel regarding the factual record. None provides grounds for excluding his testimony.

### A. Plaintiff's Disagreement with Dr. Israel's Conclusion that Super Rewards Operated in a Competitive Industry with Low Barriers to Entry Is Not a Valid Ground for Exclusion.

Plaintiff argues that Dr. Israel's opinion that Super Rewards would not have earned a supra-competitive rate of return in the but-for world should be excluded because it is "flatly

[3] Plaintiff suggests that Dr. Israel "may not be qualified" because he has never testified or submitted a report on "a lost profits calculation." D.I. 316 at 5. But he has been retained as an expert, including by the Federal Trade Commission, to opine on lost profits. *See* Ex. 3 at 31:19-37:20. Regardless, he is well-qualified to opine on the issues at hand. *See* Ex. 2 ¶¶ 1-5, App. A.

contradicted by the real-world facts and Dr. Israel's own testimony." D.I. 316 at 8. Plaintiff is wrong on both scores and misstates the record.

Before analyzing Super Rewards' business based on a competitive rate of return, Dr. Israel examined the characteristics of the VCS industry and concluded that they were consistent with a highly competitive market in which no single supplier has a sustainable competitive advantage. *See* Ex. 2 ¶¶ 14-38; Ex. 3 at 204:7-205:5, 214:4-12. He observed, for example, that Super Rewards operated in the "intense[ly]" competitive VCS industry (as Plaintiff's own expert described it (Ex. 2 ¶ 19 (quoting Ex. 1 ¶ 34)) with no sustainable competitive advantage in either direct pay or offer ads. *See, e.g., id*. Ex. 2 ¶ 38. Dr. Israel further observed that Super Rewards did not have any patent or other intellectual property rights that would confer a competitive advantage. *See* Ex. 3 at 240:4-241:3 (no technological advantage that "couldn't be copied"). Additionally, Dr. Israel observed that the initial capital required to provide VCS is modest (*see, e.g., id.* at 223:5-17); there are no other significant barriers to entry (Ex. 2 ¶ 29); and Super Rewards itself recognized VCS as increasingly commoditized. *Id.* ¶¶ 24-25.

Under these circumstances, economic principles dictate that industry participants should earn no more than a competitive rate of return over time. *Id.* ¶ 14 & nn. 14, 19 (citing *Economics of Strategy,* 6th ed., and *Principles of Corporate Finance,* 10th ed.); Ex. 3 at 208:3-22 ("[I]t's a basic principle of economics that if there's no competitive advantage and there's many competitors and more competitors can enter, that economic profits will be driven to zero.").

Contrary to Plaintiff's assertion that Dr. Israel's opinion is contradicted by real-world facts, Dr. Israel relies upon *undisputed* facts in the record. *See* Ex. 2 ¶¶ 34-38. For example, Dr. Leitzinger acknowledges that competition in the VCS industry was "intense" and "multi-dimensional" with many providers. *See* Ex. 1 ¶¶ 34, 65. Dr. Israel also relies on numerous

Super Rewards documents that show direct pay (*i.e.*, payment processing) was an increasingly commoditized business in which it was "difficult to create differentiation." Ex. 4; *see also, e.g.*, Ex. 5; Ex. 6. And as Dr. Leitzinger acknowledged, "by early 2010, direct payments made up the majority of [Super Rewards'] revenue and continued to grow in importance after that." Ex. 1 ¶ 44. Based on the factual record, Dr. Israel concluded that Super Rewards could not have sustained a supra-competitive rate of return in such an environment. Ex. 3 at 271:11-273:16.

Plaintiff's contention that Dr. Israel's opinion is contradicted by his own testimony misstates the record. Far from "admitt[ing]" that Super Rewards had competitive advantages over its rivals (D.I. 316 at 8), Dr. Israel testified that he has seen <u>no evidence</u> that Super Rewards had a sustainable competitive advantage in the VCS industry (Ex. 3 at 215:6-14), including in the categories identified by Plaintiff in its brief (*see* D.I. 316 at 8-9). *See, e.g.*, Ex. 3 at 231:22-235:15 (relationships with payment providers and developers); 235:17-238:20 (relationships with game developers); 239:9-241:3, 252:6-15 (technology to "tailor" services to users).

Based on sound economic and factual foundations, Dr. Israel constructs a damages model that estimates a but-for world where Super Rewards earns no more than a competitive rate of return on its capital investment.[4] *See* Ex. 2 at Exs. 1, 2. Plaintiff does not dispute this model or methodology. D.I. 316 at 8-9. Plaintiff disagrees with Dr. Israel's *conclusion*, but that is not a valid basis for excluding his testimony. *See, e.g.*, *Daubert*, 509 U.S. at 595 (court's inquiry "must be solely on [the expert's] principles and methodology, not on the conclusions that they

[4] As is standard economic practice, Dr. Israel uses the weighted-average cost of capital ("WACC")—as calculated by Dr. Leitzinger—as the rate of return in his damages model. *See* Ex. 2 ¶¶ 16, 39 n.74; Ex. 1 at Ex. 14. Dr. Israel then calculates the current value of Adknowledge's investment in Super Rewards by "'bring[ing] forward' the damage amount using the same approach as Dr. Leitzinger." Ex. 2 ¶ 48. The resulting damages estimate serves as an upper bound on Plaintiff's damages since it does not consider the effects of changed economic conditions or poor business judgment on Super Rewards' performance. *See id.* ¶ 50.

generate"); *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) ("[T]he role of the District Court is simply to evaluate whether the *methodology* utilized by the expert is reliable.").

### B. Plaintiff's Disagreement with Dr. Israel's Estimates of Super Rewards' But-For Margin and Share Is Not A Basis for Excluding His Testimony.

Dr. Israel illustrates the unreliability of Dr. Leitzinger's lost profits methodology by running the same calculations using fact-based estimates of Super Rewards' margin and share. Ex. 2 ¶¶ 76-83. In other words, Dr. Israel uses Dr. Leitzinger's own methodology to demonstrate the unreliability of key assumptions and how those assumptions grossly inflate his damages estimate. Plaintiff may disagree with the fact-based estimates used by Dr. Israel, but it does not disagree with the underlying *methodology*, which was utilized by its own expert.

Plaintiff's argument that Dr. Israel's alternative margin and market-share estimates are unsupported by the factual record is without merit. D.I. 316 at 6-8. Indeed, Plaintiff's motion ignores the factual evidence *cited by Dr. Israel* in support of his analysis and assumptions. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 415 n.3 (3d Cir. 2002) (expert testimony admissible where "the record contains *some* factual basis" for the opinion).

***First***, contrary to Plaintiff's mischaracterizations, Dr. Israel did not pluck two alternative margin estimates from random sources. D.I. 316 at 6-7. Moreover, as Dr. Israel explained, he analyzed trends in overall profit margins, changes in the business, and internal projections—all of which led him to conclude that his margin estimates are reasonable.[5] Ex. 2 ¶¶ 67-75.

Specifically, the first but-for margin estimate of 4% comes directly from a report created for Adknowledge (Super Rewards' parent) in 2009 by an investor forecasting Super Rewards' profit margins over time. *See id.* ¶ 72; Ex. 7 at 17. Dr. Israel found that this profit margin

[5] In contrast, Dr. Leitzinger assumes Super Rewards' margin would forever be the same as in the second quarter of 2010 without any analysis or account for changes in competitive or economic conditions. Ex. 2 ¶¶ 67-75.

estimate was reasonable, in part, because it was a forecasted margin for direct-pay services *only*, and Dr. Israel had concluded, based on the evidentiary record, that Super Rewards' business would have consisted almost entirely of direct pay services (*i.e.*, payment processing services) in the but-for world. *See, e.g.*, Ex. 2 ¶¶ 72-75; Ex. 3 at 412:20-413:13. Indeed, the CEO of Plaintiff's parent company made a similar estimate in 2010, stating that "[l]ong-term, we should expect no more than 5% margins on direct pay." Ex. 6. Plaintiff asserts that this forecast "turned out to be wrong" because Super Rewards' profit margin in early 2011 was supposedly [redacted]. D.I. 316 at 6. But the [redacted] figure (even if accurate) is not comparable because it included services other than the direct pay services Dr. Israel was analyzing, such as offer ads and non-VCS operations. *See* Ex. 12 at ¶ 58 n.119.

Dr. Israel's second alternative but-for margin estimate is based on PayPal's margin (3.73%)—a leading payment-processor. *See* Ex. 2 ¶ 82 n.140. Plaintiff argues that PayPal's margin "cannot be a reliable proxy" because PayPal never "competed" with Super Rewards. D.I. 316 at 6. That argument ignores evidence that Super Rewards lost business when developers directly integrated with PayPal instead of using Super Rewards' service. *See, e.g.*, Ex. 8 (2009 email from Super Rewards to Playfish noting that "since you PayPal integrated on your own, simply deactivate it on our dashboard"); Ex. 9 at 190, 224 (VCS providers reporting that "in-house solutions are the major competition"); Ex. 3 at 260:17-22. Moreover, Dr. Israel analyzed the characteristics of the Super Rewards business and concluded that PayPal was a reasonable benchmark. Ex. 2 ¶ 82. As described above, the Super Rewards business was fast becoming almost entirely a payment-processing business (*see id.* ¶¶ 24-25, 72-75), which Super Rewards admits was commoditized with low margins. *See, e.g.*, Ex. 5 ("Because Direct Pay is a commoditized transaction processing product, it has commodity gross margins.").

***Second***, Dr. Israel offers two alternative estimates of Super Rewards' share of the total payment volume on Facebook's Platform in the but-for world. Plaintiff again mischaracterizes Dr. Israel's analysis to suggest that his estimates were simply "cherry-pick[ed]" to reinforce his conclusion. D.I. 316 at 7. To the contrary, as Dr. Israel's report and testimony demonstrate, he analyzed the evidence, assessed Dr. Leitzinger's assumptions, and then adjusted those assumptions to account for facts that Dr. Leitzinger ignored. *See* Ex. 2 ¶¶ 57-66, 79-81.

Specifically, Dr. Israel's first share estimate ([redacted] is derived from "extend[ing] Dr. Leitzinger's share analysis through the second quarter of 2011," which showed that Super Rewards' share was declining rapidly during the first half of 2011, before Facebook implemented the challenged policies. *See id.* ¶¶ 79-81, Ex. 3. Dr. Israel also determined that, contrary to Dr. Leitzinger's assumptions, Facebook's negotiated agreements with five large developers beginning in mid-2010 did not (and could not) account for this decline because Super Rewards had already lost their business.[6] Dr. Israel therefore used Super Rewards' share immediately before Facebook's July 2011 Policy took effect as his first estimate of Super Rewards' but-for share of payment volume on Facebook's Platform. *See id.*

Plaintiff argues that its share was artificially reduced because developers were moving away from Super Rewards in early 2011 in anticipation of the forthcoming Facebook policy. D.I. 316 at 7. But Plaintiff does not cite a single instance of any business lost by Super Rewards for this reason.[7] Indeed, Super Rewards' overall business volume *increased* during this period.

---

[6] Dr. Israel testified that 4 out of the 5 developers were not customers of Super Rewards at the time of their agreements with Facebook, and the fifth had only "a little bit of business" with Super Rewards and soon took VCS in house. *See* Ex. 3 at 106:2-107:7; Ex. 1 at Ex. 8.

[7] Plaintiff's liability expert, Dr. Alan Frankel, opined that developers stayed with Super Rewards until "the last possible moment," further supporting that developers did not move away until July 2011. Ex. 2 ¶ 7 n. 4 (citing Expert Report of Alan Frankel ¶ 261).

*See* Ex. 1 at Ex. 11.

Dr. Israel's second estimate of Super Rewards' but-for share of total payment volume on Facebook's Platform ([redacted] is also based on the [redacted] share referenced above with an adjustment to account for another fact ignored by Dr. Leitzinger—other developers (beyond the three identified by Dr. Leitzinger) already self-provided or were likely to self-provide VCS in the but-for world. *See* Ex. 2 ¶¶ 58, 81. To be conservative, Dr. Israel applied the assertion *put forth by Dr. Leitzinger* that, by 2014, [redacted] of all Facebook Platform payment volume was attributable to developers earning sufficient revenue to self-provide VCS. *See id.* ¶ 81; Ex. 1 ¶ 31.

Dr. Israel had a sound factual basis for his estimates of Super Rewards' but-for margin and share. Plaintiff's criticisms go to the weight to afford Dr. Israel's testimony, not its admissibility. *See, e.g.*, *Exelis*, 2012 WL 6043494, at *13 ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

**C. Dr. Israel's Opinion Regarding the Impact of Super Rewards Poor Business Decisions Is Relevant to Damages.**

Plaintiff argues that the Court should exclude as irrelevant Dr. Israel's opinion that Dr. Leitzinger's damages estimate fails to account for factors independent of the challenged Facebook conduct. D.I. 316 at 9-10. Plaintiff is simply wrong: This opinion is relevant to the jury's consideration of the appropriate amount of damages if it reaches that issue.

Plaintiff bears the burden of proving damages in an amount that accounts not only for the probable effects of the alleged unlawful conduct, *but also* "the probable effects of lawful competition and changed economic conditions." Failing to do so renders the expert's damages estimate unreliable and speculative. *See R. S. E., Inc. v. Pennsy Supply, Inc.*, 523 F. Supp. 954, 964–65 (M.D. Pa. 1981) ("[W]here a plaintiff's projections fail to consider the probable effects

of lawful competition and changed economic conditions, a jury cannot rationally reduce the damage estimate to reflect these changes and therefore any amount they may award would be based upon speculation and guesswork."); *see also Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1353 (3d Cir. 1975).

Plaintiff wrongly argues that Dr. Israel's opinion is limited to Super Rewards' poor decisions *after* the challenged Facebook conduct. D.I. 316 at 9. In fact, Dr. Israel relies upon evidence that Super Rewards failed to innovate and diversify its services *prior* to the time of the challenged conduct. *See, e.g.,* Ex. 10 at 155:7-156:8 (Super Rewards "hadn't done anything to the offer wall since—since Adknowledge acquired Super Rewards"); Ex. 11 at -5056 (2012 Super Rewards presentation admitting "[n]o product line innovation in 2 years").

Plaintiff also argues that Dr. Israel's opinion is irrelevant because Super Rewards' performance "in other markets (such as the mobile market), or with other products, does not relate to the damages it suffered in the [alleged] relevant market." D.I. 316 at 9. But as Dr. Israel explained, this misses the mark: "[W]hen assessing damages, I need to understand the causes of Super Rewards' poor performance. That's not constrained to some specific market. It's whether it made appropriate—types of businesses decisions that tend to be associated with success. To do that analysis properly, I don't limit myself to one particular antitrust market as alleged by plaintiffs." Ex. 3 at 185:1-20. He opines that "the gap between the competitive return and what Super Rewards did is explained by decisions that Super Rewards made." *Id.* at 197:1-13. In other words, a proper damages analysis must account for "the probable effects" of all relevant factors on the plaintiff's but-for performance. *See R. S. E., Inc.*, 523 F. Supp. at 964–65.

## V. CONCLUSION

For the foregoing reasons, Facebook requests that the Court deny Plaintiff's motion.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*/s/ Benjamin J. Schladweiler*
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
Anne M. Steadman (#6221)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
dross@ramllp.com
bschladweiler@ramllp.com
asteadman@ramllp.com

*Counsel for Defendant Facebook, Inc.*

*Of Counsel*:

Thomas O. Barnett
Jonathan Gimblett
Anne Y. Lee
Katharine Mitchell-Tombras
Lauren S. Willard
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001
(202) 662-6000
tbarnett@cov.com
jgimblett@cov.com
alee@cov.com
kmitchelltombras@cov.com
lwillard@cov.com

Kathryn E. Cahoy
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
(650) 632-4700
kcahoy@cov.com

Mark C. Hansen
Kevin B Huff
KELLOGG, HANSEN, TODD, FIGEL
& FREDERICK P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com

Dated: April 7, 2017

# CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on April 7, 2017, a true copy of the foregoing ***Facebook's Brief in Opposition to Social Ranger's Motion to Exclude the Expert Testimony of Dr. Mark Israel*** was served via electronic mail upon the following counsel of record:

Kenneth L. Dorsney
Mary B. Matterer
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801
kdorsney@morrisjames.com
mmatterer@morrisjames.com

Derek A. Newman
Derek Linke
Jason Sykes
NEWMAN DUWORS LLP
1201 Third Avenue, Suite 1600
Seattle, WA 98101
dn@newmanlaw.com
linke@newmanlaw.com
jason@newmanlaw.com

Sophy Tabandeh
NEWMAN DUWORS LLP
600 California Street, 14th Floor
San Francisco, CA 94109
sophy@newmanlaw.com

Brian R. Strange
Keith L. Butler
Cindy Z. Reichline
STRANGE & BUTLER
12100 Wilshire Boulevard
Suite 1900
Los Angeles, CA 90025
bstrange@strangeandbutler.com
kbutler@strangeandbutler.com
creichline@strangeandbutler.com

*Counsel for Plaintiff Social Ranger, LLC*

Bruce Van Dalsem
Kevin Teruya
Michael Lifrak
David Elihu
William C. Price
Alyssa L. Greenberg
Jon C. Cederberg
Harold A. Barza
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 Figueroa Street, 10th Floor
Los Angeles, CA 90017
brucevandalsem@quinnemanuel.com
kevinteruya@quinnemanuel.com
michaellifrak@quinnemanuel.com
davidelihu@quinnemanuel.com
williamprice@quinnemanuel.com
alygreenberg@quinnemanuel.com
joncederberg@quinnemanuel.com
halbarza@quinnemanuel.com

John J. Herbst
ADKNOWLEDGE
CLO & SVP Corporate Development
4600 Madison Avenue, 10th Floor
Kansas City, MO 64112
jherbst@adknowledge.com

Ian R. Liston
WILSON SONSINI GOODRICH & ROSATI, P.C.
222 Delaware Avenue, Suite 800
Wilmington, DE 19801
iliston@wsgr.com

*Counsel for Plaintiff Social Ranger, LLC*

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)